UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 21-62079-CIV-ALTMAN/HUNT

CHANEL, INC.,

        *Plaintiff*,

v.

FAKESCHANELSHOP.COM, *et al.*,

        *Defendants*.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT

THIS CAUSE comes before this Court on the Plaintiff Chanel, Inc.'s Motion for Entry of Final Default Judgment Against Defendants[1] (the "Motion for Final Default Judgment"), ECF No. 33. The Honorable Roy K. Altman, United States District Judge, referred the Motion for Final Default Judgment to the undersigned. ECF No. 34; *see also* 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1. The undersigned has carefully reviewed the pleadings, the record in this case, the applicable law and is otherwise fully advised in the premises.

On October 6, 2021, Plaintiff filed its Complaint against Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), cybersquatting under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(d) (Count III), common law unfair competition (Count IV), and common law trademark

---

1.     Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto.

infringement (Count V). *See* ECF No. 1. In its Complaint, Plaintiff requests the Court (1) enter a permanent injunction enjoining Defendants from producing or selling goods that infringe on its trademarks, ECF No. 1 at ¶ 81(a); (2) disable, or at Plaintiff's election, transfer the domain names at issue to Plaintiff, *Id.* at ¶ 81(e, f); (3) assign all rights, title, and interest, to the domain names to Plaintiff and permanently disable, delist, or deindex the domain names and corresponding URLs from any Internet search engines, *Id.* at ¶ 81(g, h, i); (4) permanently suspend the e-mail addresses that are or have been used by Defendants in connection with the domain names at issue, *Id.* at ¶ 81(d); (5) permanently cease all services to Defendants in connection with the domain names at issue, *Id.* at ¶ 81(b, c); and (6) award of statutory damages pursuant to 15 U.S.C. §1117(c) and (d), *Id.* at ¶ 81(j, k). For the reasons more fully discussed below, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Final Default Judgment, ECF No. 33, be GRANTED.

## I.   <u>FACTUAL BACKGROUND</u>[2]

Plaintiff is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, |

---

[2]   The factual background is taken from Plaintiff's Complaint, ECF No. 1, Plaintiff's Motion for Final Default Judgment, ECF No. 33, and supporting evidentiary submissions.

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| | | | Raincoats, Scarves, Shoes and Boots |
| ◎ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| ◎ | 1,501,898 | August 30, 1988 | IC 006 - Keychains<br>IC 014 - Costume Jewelry<br>IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 - Brooches and Buttons for Clothing |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ◎ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| J12 | 2,559,772 | April 9, 2002 | IC 014 - Timepieces; Namely, Watches, and Parts Thereof |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| ◎ | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers and Cell Phones<br>IC 018 - Key Cases |
| ◎ | 4,241,822 | November 13, 2012 | IC 025 - For Clothing, namely, Coats, Jackets, Dresses, Tops, Blouses, Sweaters, Cardigans, Skirts, Vests, Pants, Jeans, Belts, Swim Wear, Pareos, Hats, Scarves, Ties, Gloves, Footwear, Hosiery |

*See* Declaration of Elizabeth Han, ECF No. 5-1 at ¶ 4. The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id.* at ¶¶ 4-5.

Defendants, through the various fully interactive,[3] commercial Internet websites and supporting domains operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Chanel Marks. *See id.* at ¶¶ 9-11; *see also* Declaration of Stephen M. Gaffigan, ECF No. 5-2 at ¶ 2.

Although each Defendant may not copy and infringe each Chanel Mark for each category of goods protected, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one or more of the Chanel Marks. *See* ECF No. 5-1 at ¶¶ 10-11. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. *See id.* at ¶¶ 9-11.

---

3.      The Plaintiff asserts multiple Defendants use some of their Subject Domain Names to act as supporting domain names to direct traffic to their fully-interactive, commercial websites, including those operating under other Subject Domain Names, from which consumers can complete purchases. *See* ECF No. 5-1 at ¶ 10, n.1; ECF No. 5-2 at ¶ 2, n.1.

        The Plaintiff also asserts some of Defendants' websites, although interactive, do not offer prices for products and/or the shopping cart feature; rather, consumers are able to browse these Defendants' listings of the Plaintiff's branded products online via their Internet stores and/or blog-style websites and actively exchange data with Defendants, ultimately allowing customers to inquire and make direct purchases via other Internet websites, including those operating under other Subject Domain Names, and/or via electronic communication, including e-mail, with the websites' sellers. *See* ECF No. 5-2 at n.1.

Plaintiff's representative reviewed and visually inspected the detailed web page captures reflecting the products offered for sale bearing the Chanel Marks by the Defendants via the Subject Domain Names, and determined the products were non-genuine, unauthorized versions of the Plaintiff's products, or used images of authentic products in order to facilitate the sale of non-genuine versions of Plaintiff's products. *See* ECF No. 5-1 at ¶¶ 10-11.

On October 6, 2021, Plaintiff filed an *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 6, which the Court granted on October 18, 2021, ECF No. 8. Pursuant to the Court's Order, Plaintiff served Defendants with their respective Summons and a copy of the Complaint via e-mail and via website posting on October 20, 2021. *See* Declaration of Stephen M. Gaffigan, ECF No. 33-1 at ¶ 4; *see also* ECF No. 16, (proof of service).

The time allowed for Defendants to respond to the Complaint has expired. *See* ECF No. 33-1 at ¶ 5. Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.* at ¶ 6. Plaintiff asserts that, to its knowledge, none of the Defendants are infants or incompetent persons, and upon information and belief, the Servicemembers Civil Relief Act does not apply. *Id.* at ¶ 7. On December 9, 2021, Plaintiff filed its Request for Clerk's Entry of Default against Defendants, ECF No. 25, and the Clerk subsequently entered default against each Defendant on December 10, 2021, for failure to plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, ECF No. 27. On April 26, 2022, the Court entered an Order on Default Final Judgment Procedure requiring

Plaintiff to submit its Motion for Entry of Final Default Judgment, ECF No. 31. Plaintiff now moves the Court to grant Final Default Judgment against all Defendants.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations and citations omitted). However, "a defendant's default does not in itself warrant the court entering a default judgment." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Court must determine whether there is a sufficient basis in the pleadings for the judgment. *See id.*

## III. DISCUSSION

### A. Liability

1. *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I).*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a) (alterations added). To prevail on the merits of a trademark infringement claim, a plaintiff must show that "(1) its mark has priority, (2) defendant used its mark in commerce, and (3) defendant's mark is likely to cause consumer confusion." *PetMed*

6

*Express v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004) (citing *Int'l Cosms. Exch., Inc., v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242 (11th Cir. 2002)). Plaintiff has sufficiently alleged and established each of these elements: (1) Plaintiff's ownership of the trademarks at issue precede Defendants' infringement, *see* ECF No. 1 at ¶ 16; (2) Defendants advertised, offered for sale, and sold goods in commerce bearing the Chanel Marks without Plaintiff's consent or authorization, *see id.* at ¶¶ 25, 27-28, 31; and (3) the marks used on the goods Defendants advertised, offered for sale, and sold are so similar to the Chanel Marks that they are likely to cause consumer confusion, *see id.* at ¶¶ 26–27, 33, 47. Accordingly, Plaintiff is entitled to a default judgment on its trademark counterfeiting and infringement claim.

2. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II).*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). As noted above, Plaintiff's well-pled allegations establishes Plaintiff's ownership of the Chanel Marks, *see* ECF No. 1 at ¶ 16, and there is a likelihood of consumer confusion due to Defendants' use of the

Chanel Marks, *see id.* at ¶¶ 26–27, 33, 54. As such, Plaintiff is entitled to a default judgment on its false designation of origin claim.

### 3. *Cybersquatting Under 15 U.S.C. § 1125(d) (Count III).*

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

Plaintiff alleges that Defendant Numbers 1, 6, and 11's Subject Domain Names (the "Cybersquatted Subject Domain Names") violate § 1125(d). Specifically, Plaintiff alleges that the Chanel Marks are distinctive or famous and that the Cybersquatted Subject Domain Names are identical or confusingly similar to the Chanel Marks. *See* ECF No. 1 at ¶¶ 20, 34, 63, 65. Moreover, Plaintiff alleges that Defendant Numbers 1, 6, and 11 registered or used the Cybersquatted Subject Domain Names with a bad faith intent to profit. *See id.* at ¶¶ 39, 62. Thus, Plaintiff is entitled to a default judgment on its cybersquatting claim against Defendant Numbers 1, 6, and 11.

4.   *Common-Law Unfair Competition and Trademark Infringement (Counts IV and V).*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381-Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987). Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc*, 336 F. Supp. 2d 1213, at 1217-18. As discussed above, Plaintiff has alleged all the elements for statutory trademark infringement. Thus, Plaintiff is also entitled to default judgment on its claims for common law unfair competition and common law trademark infringement.

**B.   Injunctive Relief and Damages**

Plaintiff requests an award of equitable relief and monetary damages against Defendants. This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223

9

(entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). Where, as here, a plaintiff seeks statutory damages and has filed detailed declarations and documentary evidence, a hearing is unnecessary to determine damages. *See Petmed*, 336 F. Supp. 2d at 1217.

Based on the default entered against Defendants, Plaintiff's well-pleaded allegations of fact in the Complaint are admitted and thus not in dispute. *See, e.g., Eagle Hosp. Physician*s, 561 F.3d at 1307. Plaintiff has also presented sufficient evidence to support its request for a permanent injunction and statutory damages. As such, Plaintiff is entitled to the entry of a final default judgment awarding the relief sought.

### 1. *Injunctive Relief*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court

no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. 1 at ¶¶ 43, 51, 59, 69, 74, 80. Further, the Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See id.* at ¶ 27 ("The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in

Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Chanel.").

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are

12

expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme and are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling or transferring the Subject Domain Names to Plaintiff, assigning all rights, title, and interest to the Subject Domain Names to Plaintiff, disabling, de-indexing or delisting the Internet websites and corresponding URLs from search engines, and suspending the e-mail addresses, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods.

2. *Statutory Damages*

Plaintiff requests an award of statutory damages against Defendants for trademark infringement in Count I and cybersquatting in Count III. Plaintiff asserts that damages for Count II, IV, and V are encompassed in Count I. *See* ECF No. 33 at 14, 16.

Damages as to Count I for Trademark Counterfeiting and Infringement

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint. *See* ECF No. 33 at 11.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where

plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

Here, the allegations in the Complaint and the evidence establish Defendants intentionally copied the Chanel Marks for the purpose of deriving the benefit of Plaintiff's famous reputation. Defendants have defaulted on Plaintiff's allegations of willfulness. *See* ECF No. 1 ¶ 32; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (concluding a court may infer willfulness from the defendants' default). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing at least one (1) mark which was in fact a counterfeit of at least one of the Chanel Marks. *See* ECF No. 1 at ¶¶ 16, 25-33, 46–48; ECF No. 5-2 at ¶¶ 4, 9-11; *see also* ECF Nos. 1-3 through 1-4. And, as noted, based upon the evidence Plaintiff has presented, it is reasonable to infer each Defendant's infringement was willful. As such, Plaintiff suggests the Court award statutory damages of $1,000,000.00 per mark, per type of

good. As each Defendant used at least one counterfeit mark on one type of good, Plaintiff suggests the Court award statutory damages of $1,000,000.00 against each Defendant as partial compensation to Plaintiff and to deter Defendants and others from continuing to counterfeit Plaintiff's trademarks. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Undersigned finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just. *See*, *Goyard St-Honore v. bagsgoyard.us*, Case No. 21-cv-61346-RKA (S.D. Fla. Oct. 4, 2021) (awarding $1,000,000.00 in statutory damages against each Defendant); *The North Face Apparel Corp., v. thenorthfacenze.com*, Case No. 21-cv-61120-RKA (S.D. Fla. July 7, 2021) (awarding $1,000,000.00 in statutory damages against each Defendant); *Chanel, Inc. v. handbagsreplica.ru*, Case No. 20-cv-62604-RKA (S.D. Fla. Feb. 25, 2021) (awarding $1,000,000.00 in statutory damages against each Defendant); *Richemont Int'l SA v. bestreplicacartier.com*, Case No. 20-cv-60637-RKA (S.D. Fla. June 2, 2020) (awarding $1,000,000.00 in statutory damages against each Defendant); *see also Chanel, Inc. v. aaachanelshop.ru*, No. 19-cv-62119-UU, 2019 U.S. Dist. LEXIS 175511 (S.D. Fla. Oct. 8, 2019) (awarding $1,000,000.00 in statutory damages against each Defendant). Accordingly, Plaintiff should be awarded $1,000,000.00 in statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c).

<u>Damages as to Count III for Cybersquatting</u>

Plaintiff's Complaint also sets forth a cause of action for cybersquatting pursuant to the ACPA, 15 U.S.C. section 1125(d). As admitted by default, and established by the

evidence submitted, Defendant Numbers 1, 6, and 11 have acted with the bad-faith intent to profit from at least one of the Chanel Marks and the goodwill associated with the Chanel Marks by registering their respective Cybersquatted Subject Domain Names identified on Schedule "B" of Plaintiff's Motion. ECF No. 1 at ¶¶ 34-39, 61–67; ECF No. 33 at 14. Each of the Cybersquatted Subject Domain Names incorporate at least one of Plaintiff's trademarks in its entirety surrounded by a descriptive or generic term, rendering the domain name nearly identical to at least one of Plaintiff's trademarks.

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *See* 15 U.S.C. § 1125(d)(1)(c); *see also Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001). Accordingly, Plaintiff is entitled to the transfer and ownership of Defendant Numbers 1, 6, and 11's Cybersquatted Subject Domain Names because they are confusingly similar to at least one of Plaintiff's trademarks.

Additionally, Plaintiff may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the Court considers just. *See* 15 U.S.C. § 1117(d). Plaintiff has elected statutory damages and requests in view of Defendant Numbers 1, 6, and 11's intentional, wrongful behavior, an award in the amount of $10,000.00 for its infringing domain name. *See* ECF No. 33 at 16, 21. The Undersigned believes that Plaintiff's request is reasonable. *See also Taverna Opa Trademark Corp. v. Ismail*, No. 08–20776–CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue); *see also Chanel, Inc. v.*

*9ureplicachanel.com*, Case No. 20-cv-60858-RKA (S.D. Fla. June 18, 2020) (awarding $10,000.00 in statutory damages for domain name at issue).

<h3 style="text-align:center">IV.   <u>RECOMMENDATION</u></h3>

For the foregoing reasons, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Final Default Judgment, ECF No. 33, be GRANTED and Final Default Judgment and Permanent Injunction be entered as follows:

1. Permanent Injunctive Relief:

The Defendants and their officers, directors, employees, agents, representatives, servants, subsidiaries, distributors, attorneys, and all persons acting in concert and participation with the Defendants are hereby permanently restrained and enjoined from:

    a. manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing and/or using the Plaintiff's trademarks, or confusingly similar trademarks identified in Paragraph 16 of the Complaint (the "Chanel Marks");

    b. using the Chanel Marks in connection with the sale of any unauthorized goods;

    c. using any logo, and/or layout which may be calculated to falsely advertise the services or products of the Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with the Plaintiff;

    d. falsely representing themselves as being connected with the Plaintiff, through sponsorship or association;

    e. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of the Defendants are in any way endorsed by, approved by, and/or associated with the Plaintiff;

    f. using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by the Defendants;

    g. affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or

sold by the Defendants as being those of the Plaintiff or in any way endorsed by the Plaintiff and from offering such goods in commerce;

h.  otherwise unfairly competing with the Plaintiff;

i.  using the Chanel Marks, or any confusingly similar trademarks, within domain name extensions, metatags, or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms which are visible to a computer user or serves to direct computer searches to websites or domain names, registered by, owned, or operated by the Defendants; and

j.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

2.  Additional Equitable Relief:

a.  In order to give practical effect to the Permanent Injunction, the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), are hereby ordered to be immediately transferred by the Defendants, their assignees and/or successors in interest or title, and the Registrars to the Plaintiff's control. To the extent the current Registrars do not facilitate the transfer of the Subject Domain Names to the Plaintiff's control within five (5) days of receipt of this Judgment, upon the Plaintiff's request, the top level domain (TLD) Registry for each of the Subject Domain Names, or their administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the Registrar of Record for the Subject Domain Names to a Registrar of the Plaintiff's choosing, and that Registrar shall transfer the Subject Domain Names to the Plaintiff, or (ii) place the Subject Domain Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP addresses where the associated websites are hosted;

b.  The Plaintiff may serve this injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses identified on Schedule "B" hereto, which are used by the Defendants in connection with the Defendants' promotion, offering for sale, and/or sale of goods bearings and/or using counterfeits and/or infringements of the Chanel Marks;

c.  The Plaintiff may serve this injunction on any Internet search engines with a request that they permanently disable, deindex or delist any specific URLs identified by the Plaintiff, based upon the Defendants' unlawful

activities being conducted via the Subject Domain Names as a whole and via the URLs identified by the Plaintiff;

d. The Defendants, their agent(s) or assign(s), shall assign in writing all rights, title, and interest, to their Subject Domain Name(s) to the Plaintiff and, if within five (5) days of receipt of this Order the Defendants fail to make such an assignment, the Court shall order the act to be done by another person appointed by the Court at the Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a); and

e. The Defendants, their agent(s) or assign(s), shall instruct in writing all search engines to permanently delist or deindex the Subject Domain Name(s) and, if within five (5) days of receipt of this Order the Defendants fail to make such a written instruction, the Court shall order the act to be done by another person appointed by the Court at the Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

3. Statutory damages in favor of the Plaintiff pursuant to 15 U.S.C. § 1117(c).

a. Award the Plaintiff damages of $1,000,000.00 against each Defendant, for which let execution issue, based upon the Court's finding that each Defendant infringed at least one trademark on one type of good. The Court considered both the willfulness of each Defendant's conduct and the deterrent value of the award imposed, and the awarded amount falls within the permissible statutory range under 15 U.S.C. § 1117(c).

4. Statutory damages in favor of the Plaintiff pursuant to U.S.C. § 1117(d) are determined to be:

a. $10,000.00 against Defendant 1 - fakeschanelshop.com, for its domain name, fakeschanelshop.com, for which let execution issue;

b. $10,000.00 against Defendant 6 - cheapbagsshopping.com, for its domain name, replicaschanelshop.com, for which let execution issue; and

c. $10,000.00 against Defendant 11 - 1creplicachanel.com, for its domain name, 1creplicachanel.com, for which let execution issue.

5. Interest from the date this action was filed shall accrue at the legal rate. *See* 28 U.S.C. § 1961.

6. The bond posted by the Plaintiff in the amount of $10,000.00 is ordered to be released by the Clerk.

7. The Court retains jurisdiction to enforce this Final Default Judgment and Permanent Injunction.

8. The Clerk shall **CLOSE** this case. All deadlines and hearing are **TERMINATED,** and any pending motions are **DENIED AS MOOT.**

Within fourteen days after being served with a copy of this Report and Recommendation, any Party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. §636(b)(1); S.D. Fla. Mag. R. 4(b). The Parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and ORDERED** at Fort Lauderdale, Florida, this 21st day of June 2022.


_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
The Honorable Roy K. Altman
All counsel of record

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | fakeschanelshop.com |
| 2 | esluxury.ru |
| 2 | essenc.ru |
| 2 | essenceofluxury.cn |
| 2 | essenceofluxury.vip |
| 2 | essenceofluxury106.ru |
| 2 | fantasticluxury.ru |
| 2 | k2-2.com |
| 2 | ofessentials.com |
| 3 | fabagg.net |
| 3 | fabags03.com |
| 4 | e8afashions.net |
| 4 | e8bagru.co |
| 4 | e8gogo.com |
| 4 | fashion8shops.net |
| 5 | bowlmar.com |
| 5 | gerochip.com |
| 6 | cheapbagsshopping.com |
| 6 | handbagsfakeshop.com |
| 6 | replicaschanelshop.com |
| 6 | replicashandbagsale.com |
| 7 | replicaluxbags.com |
| 7 | replicaluxurybags.com |
| 8 | cis-rhone-alpes.fr |
| 8 | payssl-365.top |
| 8 | shopsping365.xyz |
| 9 | luxurymybags.com |
| 9 | qualityluxurybags.com |
| 9 | replicapa.com |
| 10 | bagsrightdesigner.com |
| 10 | replicaxe.com |
| 11 | 1creplicachanel.com |
| 11 | fakescg.com |
| 12 | 12procase.com |
| 13 | aescat.com |
| 14 | alexcn.ru |
| 15 | ashion.ru |

| 16 | bagluxus.com |
| 17 | better7a.com |
| 18 | borsaoutlet.net |
| 19 | brandandbox.ru |
| 20 | bratzcloset.co |
| 21 | bzmpa.cn |
| 22 | cheap-bags.ru |
| 23 | cnnoobs.com |
| 24 | comingfashions.com |
| 25 | crisandco.co |
| 26 | defeiyibags.com |
| 27 | famousheels.to |
| 28 | fashioncheapbag.com |
| 29 | goldwatcheshop.com |
| 30 | ibyluxury.com |
| 31 | japanchannel.vip |
| 32 | jingbags.com |
| 33 | kalizeylux.com |
| 34 | lucybags.ru |
| 35 | lussoeborseit.com |
| 36 | luxier.co.uk |
| 37 | luxshion.com |
| 38 | luxupurse.com |
| 39 | luxury500.net |
| 40 | luxury-baron.com |
| 41 | luxurybellissimo.co.uk |
| 42 | luxurytasticreps.ru |
| 43 | lvbase.ru |
| 44 | lvluxurybag.ga |
| 45 | mainoov.com |
| 46 | mumus.top |
| 47 | myaalist.com |
| 48 | mythick.ru |
| 49 | outletshops2021.ru |
| 50 | replicafashion.ru |
| 51 | shoptobags.com |
| 52 | shoptywl.com |
| 53 | solebags.ru |
| 54 | sportmall1.com |
| 55 | thebagsilove.com |
| 56 | thefashiondesigner.ru |

| 57 | topluxury-buy.com |
|----|-------------------|
| 58 | ustarbiz.ru |
| 59 | wenwenluxury.com |
| 60 | yimahandbags.cn |
| 61 | yoongxifengkaixing.com |

**SCHEDULE "B"**
**E-MAIL ADDRESSES USED IN CONNECTION WITH THE SALE OF**
**COUNTERFEIT GOODS BEARING THE CHANEL MARKS**

| |
|---|
| officialshopservice@gmail.com |
| gobuycase@gmail.com |
| aescat@outlook.com |
| cw2992059@gmail.com |
| dobestservice@outlook.com |
| borsedisconto@gmail.com |
| brandandbox@gmail.com |
| 365bagoutlet@gmail.com |
| comingfashionsservice@gmail.com |
| watchesc@outlook.com |
| ibyluxury@gmail.com |
| Lucybags.ru@gmail.com |
| Luxier.uk@gmail.com |
| winwen2021@gmail.com |
| hw77maysonlong@gmail.com |
| mainoov3@gmail.com |
| cnshoppe@gmail.com |
| lovesarastudio@gmail.com |
| cheryljhlu@hotmail.com |
| jopliherbeck34@gmail.com |